UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT A. ROUNTREE,

Plaintiff,

v.

MICHAEL J. ASTRUE[1], Commissioner of Social Security,

Defendant.

CASE NO. C06-5526KLS

ORDER REMANDING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff, Scott A. Rountree, has brought this matter for judicial review of the denial of his application for disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is thirty-five years old.[2] Tr. 25. He has an eighth grade education, including special education classes, and past work experience as a highway flagger, dishwasher, garment sorter, and

[1]Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

[2]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

waste control laborer. Tr. 22, 66, 71.

On May 8, 2003, plaintiff protectively filed an application for disability insurance benefits, alleging disability as of June 1, 2001, due to left shoulder problems and high blood pressure. Tr. 14, 57, 65. His application was denied initially and on reconsideration. Tr. 14, 25-27, 32. A hearing was held before an administrative law judge ("ALJ") on February 9, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 464-523.

On March 11, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of residuals of a left rotator cuff tear, a major depressive disorder versus adjustment disorder, borderline intellectual functioning, and a pain disorder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, with other non-exertional limitations, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 16, 18, 22-24. Plaintiff's request for review was denied by the Appeals Council on July 21, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On September 13, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits for the following reasons:

(a) the ALJ erred in assessing plaintiff's residual functional capacity;

(b) the ALJ erred in evaluating the lay witness evidence in the record;

(c) the ALJ erred in assessing plaintiff's credibility; and

(d) the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

---

[3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Analysis of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant had the residual functional capacity to lift and carry up to 10 pounds occasionally and less than five pounds frequently with the left arm and up to 25 pounds occasionally and up to 10 pounds frequently with the right dominant arm. He can stand and/or walk for up to six hours of an eight-hour workday. He can sit for up to six hours of an eight-hour workday. He has limited use of the left arm but can use the left arm as needed to extend the forearm from the elbow joint and can perform occasional reaching with the left arm. He is limited to work which does not require ladder climbing, overhead work or pushing or pulling with the left upper extremity. He must avoid concentrated exposure to extreme cold, vibration, or hazards. He is further limited to simple work involving no direct public interaction.

Tr. 18. Plaintiff argues the above residual functional capacity assessment is incompatible with the medical evidence in the record, which he further asserts the ALJ erred in evaluating. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the medical evidence in the record and thus in assessing plaintiff's residual functional capacity.

A. Dr. Newell-Eggert

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the

ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

In early February 2006, Margo K. Newell-Eggert, M.D., one of plaintiff's treating physicians, completed a physical capacities evaluation form, in which she found him to be capable of sitting for one half hour at a time and for a total of three to four hours during an eight-hour day, standing for one half hour at a time and for a total of five hours during an eight-hour day, and walking for two hours at a time and for a total of four to five hours in an eight-hour day. Tr. 459. Dr. Newell-Eggert further found that plaintiff could only lift and carry up to five pounds occasionally with his right arm, and that he could grasp, push and pull, and do fine manipulation only with his right hand. Id.

In addition, Dr. Newell-Eggert found that plaintiff could not crawl, climb or reach above shoulder level at all, but could bend and squat occasionally. Tr. 460. She found he was totally restricted in regard to activities involving unprotected heights and exposure to marked changes in temperature and humidity, and moderately restricted in activities involving being around moving machinery and driving automotive equipment. Id. Finally, Dr. Newell-Eggert felt that plaintiff likely would miss more than four days of work per month, and that he was not employable. Id.

With respect to Dr. Newell-Eggert's findings regarding lifting and carrying, the ALJ stated he was not crediting those findings to the extent that plaintiff was "unable to lift and carry any weight with the left

arm." Tr. 21. Plaintiff argues the ALJ failed to provide any rationale for rejecting the left arm limitations found by Dr. Newell-Eggert. The undersigned agrees. Clearly, although the ALJ did reject those left arm limitations, he did not provide any reason as to why he did so. This was error.

The weight of the evidence in the record, furthermore, appears to support Dr. Newell-Eggert's opinion in this regard. For example, in early November 2001, plaintiff was found by examining physician, Robert D. McElhaney, Jr., M.D., to be able to work in environments where lifting with his left arm would be limited to less than five pounds, that is, "essentially paperwork type jobs." Tr. 446. In late September 2002, Lisa L. Lamoreaux, M.D., who also treated plaintiff, opined that he had a "severe disability" in his left arm, which she described as "almost ratable at an upper extremity amputation" with its current level of function. Tr. 252. Dr. Lamoreaux made similar findings in early October 2002. Tr. 330-31.

In late November 2002, Dr. Lamoreaux opined that plaintiff could do "light duty work," but not with the use of his left shoulder. Tr. 248. A performance-based physical capacity evaluation performed by Donna Umali, an occupational therapist, in late July 2003, indicated an inability on the part of plaintiff to use his left upper extremity for reaching, lifting or carrying purposes. Tr. 447-48, 456. In late September 2003, Dr. Lamoreaux again opined that plaintiff could not lift any weight from floor to waist or reach overhead. Tr. 242. Dr. Newell-Eggert herself was consistent in finding plaintiff unable to use his left arm for lifting or carrying, including in early April 2003, when she agreed with the opinion of Dr. Lamoreaux. See Tr. 278, 286, 289, 296, 304, 406, 411, 427, 432, 439. Thus, with the exception of C. R. Lantz, M.D., and David L. Deutsch, M.D., two non-examining, consulting physicians, whose opinions on this issue the ALJ discounted (Tr. 20-21), no other physicians have voiced an opinion regarding the use of that arm or shoulder that contradicts those of Drs. Newell-Eggert or Lamoreaux.

The ALJ also rejected Dr. Newell-Eggert's findings regarding the limitations that she found with respect to his ability to lift and carry with his right arm, finding specifically as follows:

> Dr. Newell-Eggert's opinion regarding significant limitations in the right arm is inconsistent with the results of a physical capacity evaluation indicating that the claimant could lift up to 20 pounds occasionally with the right arm. (Exhibit 23F/278). The undersigned has ultimately credited the claimant's testimony at the hearing that he is able to lift up to 25 pounds occasionally with the right dominant arm.

Tr. 21. Plaintiff does not argue specifically that the ALJ erred in so finding, and, indeed, the weight of the medical evidence in the record appears to support the ALJ in this regard, at least to the extent that plaintiff

could lift significantly more weight with his right arm than found by Dr. Newell-Eggert.

No other opinion source in the record has found plaintiff to be as limited in his ability to lift and carry with his right arm as was found by Dr. Newell-Eggert. For example, the performance-based physical capacity evaluation completed by Ms. Umali in late July 2003, showed plaintiff was able to lift ten pounds or less frequently and twenty pounds maximum with his right arm. Tr. 447. In early December 2003, Drs. Lantz and Deutsch opined that plaintiff was able to lift ten pounds on both a frequent and an occasional basis. Tr. 319.[4] As pointed out by the ALJ, furthermore, plaintiff testified at the hearing that he could lift up to twenty-five pounds with his right arm, though not necessarily on an occasional basis. Tr. 495.

The ALJ further rejected Dr. Newell-Eggert's limitations on simple grasping and fine manipulation, noting plaintiff's "demonstrated ability to perform at least frequent fine manipulation and grasping" during the late July 2003 physical capacity evaluation. Tr. 21. Plaintiff argues the ALJ erred in so finding, noting that the physical capacity evaluation showed he was precluded from reaching with his left upper extremity. Tr. 448. The inability to reach, however, is not necessarily incompatible with the ability to perform fine manipulation and grasping. Indeed, the late July 2003 physical capacity evaluation indicated plaintiff was able to perform fine manipulation and grasping, albeit with the restriction that he must keep his left upper extremity close to his body when doing so due to the reaching limitation. Tr. 453-54.

The only other medical sources in the record to comment on plaintiff's manipulative abilities are Dr. Lantz and Dr. Deutsch, who found no limitations in his ability to perform handling, feeling or fine manipulation. Tr. 320. Nevertheless, the ability to perform grasping and fine manipulation arguably is incompatible with the opinions of Dr. Newell-Eggert and Dr. Lamoreaux that plaintiff was essentially non-functional with respect to the use of his left upper extremity. To that end, therefore, and in light of the additional grasping and fine manipulation restrictions noted by Ms. Umali in the late July physical capacity evaluation, remand for further consideration of this issue is required.

The undersigned, however disagrees that the ALJ erred in failing to adopt the limitation found by Dr. Newell-Eggert that plaintiff would be moderately limited in his ability to drive automobile equipment.

---

[4]The undersigned notes that Dr. Lamoreaux did not mention a specific upper extremity when she opined in late September 2003, that plaintiff could not lift or carry any weight from floor to waist. See Tr. 242. Nevertheless, the undersigned agrees with the ALJ's assumption that these limitations applied "only to the left arm based on her diagnosis of irreparable left rotator cuff tear." Tr. 21, 241. Indeed, nowhere else in her diagnostic records does Dr. Lamoreaux note any significant limitations with respect to plaintiff's use of his right upper extremity.

The ALJ found that based on the opinions of Drs. Lantz and Deutsch, plaintiff must avoid concentrated exposure to "hazards", which was defined to include the term "machinery". Tr. 18, 20, 322. This is not inconsistent with a moderate limitation with respect to driving automobile equipment.

Lastly, the undersigned notes the ALJ further rejected Dr. Newell-Eggert's opinions that plaintiff would likely miss more than four days of work per month and would be unemployable. Tr. 21. Plaintiff does not specifically object to these findings, and the undersigned also finds no error here. In essence, the ALJ rejected those findings based on the lack of support in the objective medical evidence in the record therefor. Dr. Newell-Eggert provided no explanation in the record as to why she believed plaintiff would miss that many days of work per month or why she found him to be totally incapable of working. Indeed, the latter opinion contradicted her early September 2003 statement that she had approved him for three different jobs with the work modification of no lifting greater than twenty pounds on occasion. Tr. 289. Other medical sources in the record, furthermore, have found plaintiff to be capable of performing at least some work.[5] See Tr. 243, 245, 248, 252, 318-23, 446.

B. Dr. van Dam and Dr. Lysak

Carla van Dam, Ph.D., completed a psychiatric review technique form in early November 2003, which was affirmed by William Lysak, Ph.D., in early March 2004. Based on a diagnosis of borderline intellectual functioning, they found plaintiff to be mildly restricted in his activities of daily living, to have moderate difficulties in social functioning and concentration, persistence or pace, and to have no episodes of decompensation. Tr. 263, 269. At the same time, Drs. van Dam and Lysak completed a mental residual functional capacity assessment form, finding plaintiff to be markedly limited in his ability to understand, remember and carry out detailed instructions, and moderately limited in his ability to: maintain attention and concentration; work in coordination with or proximity to others; make simple work-related decisions; interact appropriately with the general public; accept instructions; respond appropriately to criticism from supervisors; respond appropriately to changes in a work setting; and set realistic goals or make plans

[5] Dr. Lamoreaux did opine in early October 2002, that plaintiff would be "[s]everely limited" (defined as being "[u]nable to lift at least 2 pounds or unable to stand and/or walk") in his ability to perform at least half-time in a normal day to day work setting. Tr. 331. As pointed out by the ALJ, however, Dr. Lamoreaux opined that plaintiff would be so limited for a period of only six weeks. Tr. 21, 331; see also Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months). Nor, as discussed above, does the objective medical evidence in the record support a finding that plaintiff is limited to such an extent in his ability to work.

independently of others. Tr. 314-17.

The ALJ found his assessment of plaintiff's residual functional capacity to be consistent with the findings of Dr. van Dam and Dr. Lysak that plaintiff was "limited to work involving non-complex tasks due to borderline intellectual functioning and distractibility and that he is better suited for work involving no direct public interaction because of frustration and irritability." Tr. 22, 317. Plaintiff argues that in so finding, the ALJ failed to make any allowance for the other limitations found by Drs. van Dam and Lysak, including his moderate limitations in the following areas: working in coordination with or proximity to others; making simple work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. Tr. 315-16. The undersigned agrees.

Although the opinions of non-examining, consulting physicians are entitled to less weight than those of treating or examining physicians, they still constitute competent medical evidence that must be considered. Here, the ALJ provided no reasons for not adopting the additional moderate mental functional limitations found by Dr. van Dam and Dr. Lysak. To that extent, the ALJ erred. On the other hand, the undersigned disagrees with plaintiff these limitations necessarily show that he is unable to sustain even unskilled sedentary work. In general, such work requires the ability to engage in the following mental activities:

(1) Understanding, remembering, and carrying out simple instructions;

(2) Making judgments that are commensurate with the functions or unskilled work (i.e., simple work-related decisions);

(3) Responding appropriately to supervision, co-workers and usual work situations; and

(4) Dealing with changes in a routine work setting.

SSR 96-9p, 1996 WL 374185 *9; 20 C.F.R. § 404.1521(b). Any "substantial loss of ability to meet any of [the above] several basic work-related activities on a sustained [i.e., full time] basis . . . will substantially erode the unskilled sedentary occupational base and would justify a finding of disability." SSR 96-6p, 1996 WL 374185 *9. SSR 96-9p does not define the term "substantial loss," however, and plaintiff presents no evidence that moderate limitations in the above functional areas constitute the type of "substantial loss of ability" contemplated by SSR 96-9p and 20 C.F.R. § 404.1521(b).

C. Dr. Regets

In early June 2003, plaintiff was evaluated by Charles M. Regets, Ph.D., who diagnosed him with a written expression disorder, a developmental reading disorder and borderline intellectual functioning. Tr. 204. He opined that plaintiff's executive functioning involving organizing appeared to be mildly impaired and that he would "require coaching at every step in the rehabilitation process." Tr. 205. Dr. Regets doubted plaintiff would "be able to complete the GED given his general learning ability." Id. He further felt it would "be important for plaintiff to be allowed enough time for hands-on experience previous to actually working" and believed he "would best be served by on the job training." Id. Finally, Dr. Regets recommended that plaintiff seek employment in a setting that did not demand "fast-paced information processing or fast-paced problem-solving." Id.

The ALJ found his assessment of plaintiff's residual functional capacity to be consistent with Dr. Regets' opinion that plaintiff would be capable of work activity that did not involve fast-paced information processing or fast-paced problem solving. Tr. 22. Plaintiff argues, however, that the ALJ erred, because he included no limitation in this area in the above-noted residual functional capacity assessment. Given that the only mental functional limitation the ALJ did include in that assessment was the restriction to simple work involving no direct public interaction, the undersigned agrees. Defendant counters that the limitation to simple work and no public contact was sufficient here. Defendant, though, presents no evidence that a limitation to simple work necessarily is done in a non-fast-paced manner. Nor can it be seriously argued that the no public contact restriction has much, if anything, to do with the pace at which plaintiff is able to process information or solve problems.

Plaintiff further argues the ALJ failed to include Dr. Regets' findings that he possessed a general educational development ("GED") level of one with respect to both language and mathematical skills. Tr. 203. Defendant does not appear to argue that the ALJ failed to do so. Indeed, there does not appear to be any objective medical evidence in the record to contradict these findings. In addition, as with the limitation to no fast-paced information processing or fast-paced problem solving, the ALJ failed to address this aspect of Dr. Regets' opinion. That failure also was error.

II. The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

As noted above, plaintiff underwent a physical capacity evaluation in late July 2003, which was performed by Donna Umali, an occupational therapist. Ms. Umali determined that plaintiff would be able to function in the light category of work on a full time basis. Tr. 447. He would be able to lift ten pounds frequently and a maximum of twenty pounds, but only with his right upper extremity. Id. He would not be able "to lift his left arm away from his body to reach forward or out to the side." Tr. 448. Thus, he would be "unable to use his left upper extremity for reaching or lifting." Id. Again, as noted above, based on this evaluation, it was found that plaintiff could perform fine manipulation and grasping, but only if use of his left upper extremity is done close to his body due to the reaching limitation. Tr. 453-54.

Plaintiff argues the ALJ failed to provide any rationale for not adopting these limitations and for not including them in his residual functional capacity assessment. The undersigned agrees. As with other lay witness evidence, Ms. Umali's physical capacity evaluation is competent evidence that the ALJ must take into account, unless he gives germane reasons for not doing so. While it is true the ALJ did consider that evaluation in his decision, the only comment the ALJ made with respect thereto was that it was determined that plaintiff "retained the ability to function in the light category of work." Tr. 19. No mention at all was made by the ALJ with respect to the other more specific limitations found by Ms. Umali. That failure to do so, or to provide any reason for not adopting them, constituted error.

III. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or

ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ discounted plaintiff's credibility in part because his allegations of disabling physical and mental impairments were inconsistent with the objective medical evidence in the record. Tr. 19-20. This is a valid basis for discounting a claimant's credibility. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that complaints are inconsistent with clinical observations can satisfy clear and convincing requirement). The ALJ, for example, noted that the weight of the medical evidence showed plaintiff to be capable of functioning within the light category level of work. Indeed, the evidence in the record overall supports the ALJ's findings that plaintiff is capable of performing within this range. See Tr. 248, 289, 318-23, 447-56. Plaintiff argues the late July 2003 physical capacity evaluation showed an ability to perform at only a limited level of light work. The ALJ, however, never found plaintiff to be capable of performing the full range of light work.

The ALJ also found the evidence in the record suggested that plaintiff has exaggerated the level of pain and functional limitations he experienced, finding specifically as follows:

> Although he typically reports to his doctors pain at 10/10, indicating the worst imaginable pain, (Exhibits 7F and 19F) and he reported shoulder pain of 20/10 in June 2004 (Exhibit 19F/28), there is no evidence of repeated hospital emergency room visits for unbearable shoulder pain. . . . At the physical capacity evaluation in July 2003, he

> reported an ability to sit or stand for 20 to 30 minutes, yet his own treating physician [Dr. Newell-Eggert] has reported that he can sit up to four hours, stand up to five hours and walk up to five hours. (Exhibits 23F/277 and 25F/82). Minnesota Multiphasic Personality Inventory-2 (MMPI-2) testing administered in June 2004 was considered to be of "borderline validity" in light of evidence suggesting exaggeration of symptoms. (Exhibit 18F/220).

Tr. 20. Certainly, such pain and symptom exaggeration may be considered evidence that a claimant may be less than candid. Plaintiff argues that because Dr. Newell-Eggert found him capable of sitting and standing for up to thirty minutes at a time (Tr. 459), her findings are not inconsistent with his own reported abilities (Tr. 448). The undersigned finds the record does not necessarily indicate the inconsistency the ALJ found in this instance. For example, it is unclear whether in his report, plaintiff was referring to the total amount of time he could perform those activities at one time or in an eight-hour workday. Nevertheless, the other examples of exaggeration the ALJ noted above still stand.

Not mentioned by plaintiff, the ALJ also discounted his credibility in part because of his criminal history and inconsistent statements regarding his past substance abuse:

> At the hearing, the claimant testified he used methamphetamines one time and later said he had used it three times. He acknowledged being a cocaine distributor in the past but claimed he never used cocaine. However, medical records dated February 24, 2003, reveal the claimant reported a history of methamphetamine and cocaine use although he stated he had not used those substances in over one year. He also reported using marijuana occasionally. (Exhibit 4F/55). In July 2004, he admitted to a remote history of cocaine use, marijuana use "almost on a regular basis" and that he had last used methamphetamine two months previously. (Exhibit 17F/190-191). The claimant has also acknowledged a history of alcohol use. However, while he testified that he no longer used alcohol to excess, medical records dated June 4, 2003, reveal the claimant admitted to drinking a six-pack of beer per day up to six of seven months previously, after his DUI in 2000. (Exhibit 7F/113). The claimant has a history of five felony convictions including burglary, eluding police, assault [sic] hit and run, DUI, and possession with intent to distribute an illegal substance. The claimant has a history of a DUI in 2000 and other driving violations in 2002.

Tr. 20. The undersigned finds it questionable that the ALJ used plaintiff's criminal history and abuse of alcohol in the past to discount his credibility. For example, there is little in plaintiff's criminal history to indicate a tendency to be untruthful with respect to his application for disability benefits, and his testimony that he no longer used alcohol to excess is not necessarily inconsistent with evidence in the record that he did so in the past. However, plaintiff's inconsistent statements regarding his past drug use do constitute a valid basis on which the ALJ could discount his credibility.

Accordingly, while not all of the specific reasons the ALJ provided for finding plaintiff to be less than fully credible may have been proper, this does not render the ALJ's credibility determination invalid, as

it is supported by substantial evidence in the record overall. Tonapetyan, 242 F.3d at 1148.

IV. The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ posed the following hypothetical question to the vocational expert:

> [C]onsider that you're dealing with an individual the same age as our Claimant, who has the same educational background and past work experience. And for this hypothetical, we're going to have lifting and carrying restrictions different from one arm to the other. . . .
>
> As you know, the left arm has -- is the non-dominant arm or it is the non-dominant arm and it is the arm most affected. For that, we're going to have ten pounds occasionally and less than 10 pounds frequently. For the right arm, we're going to have 25 pounds occasionally and 10 pounds more frequently. And the sit -- or I mean, sorry -- the stand and walk is going to be eight hours -- I mean, sorry, six of eight standing and walking and sitting six of eight. So those things are not changed at all from what we would expect in a normally capable person. There should be no pushing and pulling again with the left upper extremity. And there should be limited reaching, no overhead reaching with the left upper extremity. Should be no ladders and should avoid concentrated exposure to extreme cold, extreme vibrations, and hazards. This hypothetical person would be capable of simple work with no direct public interaction.

Tr. 497. In response to that hypothetical question, the vocational expert testified that plaintiff would be able to perform the jobs of surveillance system monitor, escort vehicle driver and garment sorter. Tr. 498-99. In his decision, the ALJ found that based on the vocational expert's testimony and plaintiff's residual

functional capacity, plaintiff was capable of doing these other jobs, which the ALJ found to be existing in significant numbers in the national economy. Tr. 23.

Plaintiff argues the ALJ improperly relied on the testimony of the vocational expert, because the hypothetical question the ALJ posed did not contain all of the limitations he included in his assessment of plaintiff's residual functional capacity. The undersigned agrees. For example, the ALJ did not include in the hypothetical question the limitation that plaintiff could lift only five pounds frequently with his left arm, and that he had limited use of his left arm, but could use it "as needed to extend the forearm from the elbow joint" and could "perform occasional reaching with the left arm." Tr. 18. However, as noted by the ALJ, the vocational expert did subsequently testifity that the three jobs identified could be done with a five pound lifting limitation as well. Tr. 517-18. Nevertheless, that still leaves the other limitation noted above that the ALJ left out. Thus, because the hypothetical question did not contain that limitation, it did not accurately reflect the ALJ's assessment of plaintiff's residual functional capacity. As such, it was error to rely on the vocational expert's testimony.

Plaintiff also argues, presumably even assuming the ALJ did not so err as described above, that the ALJ erred in finding him capable of performing the jobs the vocational expert testified he could do in light of the limitations in language and mathematical skills found by Dr. Regets. As noted above, Dr. Regets found plaintiff limited to a GED level of one in both skill areas. Plaintiff points out, however, that the job of surveillance system monitor and escort vehicle driver, as defined by the Dictionary of Occupational Titles ("DOT"), each require a greater level of language development skills. DOT 379.367-010, 919.663-022. In addition, it appears the job of garment sorter requires a higher level of mathematical development skills than that assessed by Dr. Regets as well. DOT 222.687-014.

It is unclear, however, that plaintiff would be found incapable of performing these jobs based on the DOT descriptions alone. For example, although there was some questioning of the vocational expert with respect to the DOT skill levels required to perform those jobs, it is not clear that the vocational expert felt plaintiff would have to meet all of the DOT's requirements to do so. See Tr. 500-07. In addition, before relying on evidence obtained from a vocational expert to support a finding of not disabled, the ALJ must "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704 *1. The ALJ also is required to explain in his or her

decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4. That was not done here. Thus, this is a further issue the Commissioner shall address on remand.

V. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain regarding plaintiff's residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

Plaintiff argues this matter should be remanded for an award of benefits because the ALJ failed to properly evaluated the opinions of Dr. Newell-Eggert and Drs. van Dam and Lysak. As discussed above, however, it is not at all clear that the medical evidence as a whole supports a finding of disability based on the ALJ's errors in evaluating their opinions. Further, while, also as discussed above, the ALJ erred as well in evaluating the opinion of Dr. Regets, again it is far from clear that a restriction to work which does not involve fast-paced information processing or fast-paced problem solving would be found disabling. The same is true with respect to the ALJ's failure to properly evaluate the late July 2003 physical capacity evaluation performed by Ms. Umali.

It is true that where lay witness evidence is improperly rejected, that testimony may be credited as a matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence

rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment). As noted by the Ninth Circuit, however, the courts do have "some flexibility" in how they apply the "credit as true" rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). Further, Schneider dealt with the situation where the Commissioner failed to cite any evidence to contradict the statements of five lay witnesses regarding her disabling impairments. 223 F.3d at 976. That is not the situation in this case. Indeed, the physical capacity evaluation provided by Ms. Umali itself contemplates plaintiff being able to perform within the range of light work.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

DATED this 2nd day of April, 2007.

Karen L. Strombom
United States Magistrate Judge